224 So.2d 60 (1969)
NEW ORLEANS UNITY SOCIETY OF PRACTICAL CHRISTIANITY
v.
STANDARD ROOFING COMPANY, Inc.
No. 3528.
Court of Appeal of Louisiana, Fourth Circuit.
June 2, 1969.
Rehearing Denied July 7, 1969.
*61 Rudolph Becker, III, New Orleans, for plaintiff-appellee.
Landrieu, Calogero & Kronlage, Charles A. Kronlage, Jr., New Orleans, for Standard Roofing Co., Inc., defendant-third-party plaintiff-appellant.
Henican, James & Cleveland, C. Ellis Henican, New Orleans, for Leonard R. Spangenberg, Jr., third-party defendant, third-party plaintiff-appellee.
Twinsburg-Miller, third-party defendant-appellee, in Pro. Per., absent and unrepresented.
Before REGAN, YARRUT and HALL, JJ.
REGAN, Judge.
The plaintiff, New Orleans Unity Society of Practical Christianity, filed this suit against the defendant, the Standard Roofing Co., Inc., endeavoring to recover the sum of $10,404.00 representing damages to its church building which resulted from the defendant's failure to properly install the roof thereon in conformity with its written guarantee.
The defendant answered and asserted, among other defenses apparently abandoned on the appeal hereof, that the leaks complained of originated in the area of a skylight in the center of the dome of the church roof and at expansion joints, and that the roof structure was not only designed by, but actually purchased by the plaintiff's architect. It further asserted that it performed its work in accordance with the architect's plan and specifications and in conformity with the personal supervision of Twinsburg-Miller, the corporation which sold the material which was applied to the surface of the church's roof.
The defendant also filed a third party petition against Twinsburg-Miller and against the plaintiff's architect, Leonard R. Spangenberg, Jr., endeavoring to recover any amount which it may be cast in judgment to the plaintiff predicated upon the hypothesis that the actual cause of the damage to the roof was the defective plans and specifications drawn by the architect and the faulty nature of the material furnished Twinsburg-Miller. The third party petition also included Albert Hulse, for the reason that he acted as the local agent for Twinsburg-Miller. This aspect of the case has no significance but is referred to only for the purpose of continuity.
The third party defendants answered the third party petition and in effect denied that the defects in the roof were caused by any negligence or fault on their respective parts.
Prior to the trial hereof, the attorney for Twinsburg-Miller withdrew, and that *62 corporation offered no defense in connection with this case.
The matter was referred for trial to a commissioner, who heard voluminous testimony and submitted an extensive written report together with his recommendations for a judgment. Exceptions were filed thereto by all of the litigants, and after consideration of the exceptions and evaluating the recommendations of the commissioner, the lower court rendered judgment in favor of the plaintiff against the principal defendant in the amount of $9,589.00 and rendered a similar judgment in favor of the principal defendant against Twinsburg-Miller Corporation as third party defendant. However, the lower court dismissed the defendant's third party petition against Leonard R. Spangenberg, Jr., the architect. From that judgment, Standard Roofing Company, Inc., the original defendant, has prosecuted this appeal.
The record discloses that the plaintiff engaged the services of Spangenberg to design and prepare plans and specifications for the construction of their church. The architect's design called for a roof consisting of two interlocking domes with a skylight to be located at the apex of each dome. The architect, in connection with the roof, was approached by representatives of Standard Roofing Company, Inc., and Twinsburg-Miller, the distributor of the material, and it was eventually agreed that Standard Roofing Company was to furnish all labor and material necessary to install a roof cover and color coating composed of a material known only as butyl rubber. Standard was also obliged to install the two skylights at the apex of the domes of the roof.
All of the parties herein were aware that the butyl rubber material had never been used on a roof in the New Orleans area before, and because of the architect's unfamiliarity with the material, he proposed that Twinsburg-Miller supply the plans and specifications for the installation of the job. However, out of an abundance of caution, he required that both Twinsburg-Miller and Standard Roofing Company execute a guarantee that when the butyl rubber roofing and flashing system was finally installed, it would remain water tight for ten years and that the color of the roof would not fade for at least five years. This guarantee was executed without any reservation by either of the foregoing litigants. In reliance upon the representations that the butyl rubber would eliminate the necessity for metal flashing, it was eliminated from the architect's plans and specifications.
The record discloses evidence, which is uncontradicted, to the effect that the roof installed by the defendant completely deteriorated within a period of less than a year after its installation, with the result that damage was done to the building from the entrance therein of water. Moreover, it is equally established that the roof must be replaced in its entirety. The lower court found as a matter of fact that the total cost of replacing the roof and repairing the water damage amounted to $9,489.00, and awarded judgment in conformity therewith.
The significant defense urged by the principal defendant is predicated upon the rationale emanating from R.S. 9:2771, which reads:
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor. Acts 1958, No.
*63 183, § 1, as amended Acts 1960, No. 84, § 1."
The defendant insists that it complied precisely with the plans and specifications which were prepared by Twinsburg-Miller and adopted by the architect, Spangenberg, as his own. The lower court was of the opinion that the defendant should be cast in judgment for the reason that this statute would not relieve a contractor from liability, irrespective of his exact compliance with the plans and specifications, when the materials which he agrees to furnish under his contract are proven to be defective. This interpretation of R.S. 9:2771 seems overly harsh and restrictive, since the obvious purpose of the statute is to relieve the contractor of liability for defects in materials not manufactured by him when he is unaware of such defects.
However, it is equally apparent that the principal defendant herein cannot escape liability to the plaintiff under the rationale of the above statute since it voluntarily undertook to execute a written ten year guarantee against roof leakage. Consequently, it is our opinion that the defendant is liable under its guarantee for the amount of damage incurred by the plaintiff as the result of the failure of the materials.
For a like reason, it is obvious that the guarantee of Twinsburg-Miller renders it liable for the failure of the materials which it furnished. Since the representatives of the defendant relied on the representations of Twinsburg-Miller to the effect that its material was in fact fool proof it is evident that the true cause of the damage incurred by the plaintiff emanated from the defective material furnished by Twinsburg-Miller. Consequently, the defendant is only technically liable to the plaintiff, and is thus entitled to a judgment against Twinsburg-Miller for any amount which it may be cast in judgment to the plaintiff.
The situation is different, however, with respect to the defendant's third party petition against the plaintiff's architect. As the lower court pointed out, if the plaintiff had sued the architect, we would be inclined to render a judgment against him for his negligent conduct in installing an unproven and untested material solely upon the representations of individuals interested in consummating a sale. However, the plaintiff did not sue him, and his legal status vis-a-vis the plaintiff is entirely different from his status vis-a-vis the defendant. To reiterate merely for the purpose of emphasis, the defendant and Twinsburg-Miller approached Spangenberg in an effort to persuade him to use their material on the roof of the church. It was in absolute reliance upon their representations that Spangenberg made use of the material, and we are aware of no theory upon which the defendant is entitled to recover from Spangenberg, when the defendant was an active and interested party in inducing Spangenberg to use the materials in the first place.
Finally, the remaining issue posed for our determination is whether the obligation of the defendant and Twinsburg-Miller to the plaintiff in conformity with their guarantee is a joint obligation or a solidary obligation. The defendant contends that the guarantees were joint rather than solidary, so that it would only be responsible for its virile share of the amount guaranteed. They rely in part upon the language of the architect to the effect that he desired a joint guarantee from both Twinsburg-Miller and the defendant, however, since the architect is not trained in the law, these statements have little or no significance in connection with our determination.
Article 2091 of the Louisiana Civil Code reads:
"There is an obligation in solido on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and *64 when the payment which is made by one of them, exonerates the others toward the creditor."
It is clear from a reading of the documents offered in connection with this litigation and from the requirement of the architect that both the defendant and Twinsburg-Miller Corporation guarantee the integrity of the roof that the intention of the parties was to the effect that they would each fully guarantee the entire roof and not merely a part thereof. Any other conclusion would be a strained interpretation of the contract. It is jurisprudentially well settled that when a contract is susceptible of two interpretations, that interpretation which leads to a sensible result is to be preferred over that which results in an absurd conclusion. Therefore, we are of the opinion that the defendant and Twinsburg-Miller agreed to guarantee the integrity of the plaintiff's roof as solidary obligors.
For the foregoing reasons, the judgment of the lower court is affirmed.
All costs incurred herein are to be paid by the defendant and the Twinsburg-Miller Corporation.
Affirmed.